Lolita **RAY, Individually and as Next Friend and Mother of Kyle Ray, a Minor, Plaintiff–Appellant,**

v.

**Mitchell H. PAUL, Defendant–Appellee.**

No. 96–0736.

Court of Appeals of Iowa.

March 28, 1997.

James M. Powers and Mark H. Rettig of Hines, Pence, Day & Powers, P.C., Cedar Rapids, for appellant.

Carole J. Anderson and Robert V.P. Waterman of Lane & Waterman, Davenport, for appellee.

Heard by CADY, P.J., and HUITINK and VOGEL, JJ.

HUITINK, Judge.

Plaintiff Lolita Ray appeals from an adverse jury verdict and resulting judgment dismissing the medical malpractice claim she brought against defendant Dr. Mitchell R. Paul on behalf of her child Kyle Ray. We affirm.

## I. Background facts and proceedings.

Ray's three-year-old child Kyle was injured when he was hit by a truck in Fort Madison on May 20, 1991. Dr. Paul treated Kyle's broken leg by placing him in a body cast. When the cast was subsequently removed, a number of skin ulcerations were discovered on Kyle's body, necessitating additional treatment.

Because the truck driver was at fault and uninsured, Ray turned to her auto insurer, Westfield Insurance Co., for coverage to pay the damages resulting from the accident. Westfield paid Ray $75,000 under the uninsured motorist provisions of Ray's policy. In exchange for receipt of these benefits, Ray was required to sign a release. The terms of the release provided:

> "Claimant for herself and insured release ... [the] Insurance Company from any and all liability for claims ... based on damages ... including present and future damages for all known or unknown claims for the bodily injury or personal injuries, loss of services and society, medical expenses, emotional trauma and death and consequences thereof...."

After settling with Westfield, Ray initiated this action seeking damages from Dr. Paul for Kyle's injuries allegedly caused by Dr. Paul's medical negligence. Paul eventually moved for summary judgment citing the terms of the foregoing release. Paul argued that Ray's settlement and release included compensation for all damages resulting from the May 20, 1991, accident, including those caused by negligent medical treatment. The district court denied Paul's motion finding disputed issues of fact concerning the intent of the parties to the release and whether Ray and her child received full compensation for their respective damages.

Prior to trial, Ray filed a motion in limine seeking exclusion of any evidence or reference to her settlement with Westfield or the terms of the release she signed. She argued that this evidence was inadmissible under the collateral source rule excluding evidence of payments received from a third party. The district court denied Ray's motion. Ray's application for interlocutory appeal was denied. Ray introduced the settlement and release as part of her case and made no objection to the admission of this evidence at trial.

During jury selection, two jurors indicated that Dr. Paul's professional status would make it difficult for them to decide the case impartially. The first of these jurors was excused without comment. When the second juror expressed this concern, the court asked him if his concerns were sincere or whether he was simply seeking to avoid service. Although the juror was excused, he was instructed to remain in the courtroom so the court could speak with him following completion of jury selection.

After the case was submitted to the jury, the court received a note from the jury foreman. In the note the foreman informed the court that one of the jurors expressed an opinion concerning Dr. Paul's professional reputation and also told other jurors that the juror's son had been successfully treated by Dr. Paul. The court denied Ray's motion for a mistrial and, following consultation with counsel, this juror was excused. The jury was instructed to disregard his remarks and rely on the evidence presented at trial.

The special verdict form returned by the jury included the jury's negative answer to an interrogatory asking, "Was Dr. Mitchell H. Paul negligent?" Ray's motion for a new

trial was denied and judgment was entered dismissing her claims.

On appeal, Ray contends that evidence of her settlement with Westfield was inadmissible and it was error for the court to conclude otherwise. She also argues that she is entitled to a new trial based on jury misconduct and prejudicial remarks made by the district court to the second juror excused during voir dire.

### II. Standard of Review.

Our review in this law action is for errors at law. Iowa R.App. P. 4.

### III. Admissibility of Settlement and Release.

We initially consider Paul's argument that Ray has either waived any objection to the admission of this evidence or failed to preserve error for appellate review. He cites Ray's election to introduce this evidence as part of her case and her failure to renew at trial the objection raised in her motion in limine.

The primary purpose of a motion in limine is to preclude reference to potentially prejudicial evidence prior to the trial court's definitive ruling on its admissibility. *State v. Davis*, 240 N.W.2d 662, 663 (Iowa 1976). Generally, any error based on the trial court's disposition of a motion in limine is not preserved unless the record includes a timely objection when the challenged evidence is offered at trial. *Id.* The resolution of a preservation of error issue is "not controlled by the title of the motion or its prayer." *State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979). Our concern is "what the ruling of the trial court does or purports to do." *Id.* A ruling limited to protection from prejudicial references must be distinguished from a ruling on the admissibility of the challenged evidence. *State v. Miller*, 229 N.W.2d 762, 768 (Iowa 1975). If the trial court's ruling is dispositive on the issue of admissibility, it is considered final for purposes of appeal and no further objection is necessary. *Id.*

In this case the district court's ruling on Ray's motion provided:

> "I'm going to ... grant the relief requested by the defendant and allow the issue of the prior settlement and the amount of the settlement to be issues for the jury to determine."

We hold this language does more than protect against prejudicial references. It is a definitive ruling admitting evidence of Ray's settlement and release of her uninsured motorist claim. No additional trial objections were necessary to preserve this issue for appeal.

Paul's waiver argument fails for the same reason. Because the trial court's ruling on admissibility was dispositive, Ray did not waive any resulting error by electing for strategic reasons to introduce this evidence as a part of her case. *See State v. Jones*, 271 N.W.2d 761, 765 (Iowa 1978) (defendant does not waive right to challenge evidence introduced by him where trial court previously ruled evidence admissible).

The resolution of the preservation of error and waiver issues necessitates consideration of the merits of Ray's challenge to the admission of the terms of the settlement and release of her uninsured motorist claim against Westfield. As noted earlier, Ray contends this evidence was excludable under the collateral source rule. We disagree.

The collateral source rule is a common law principle that prohibits reduction of plaintiff's damages by sums the plaintiff has received from another or collateral source. *See Groesbeck v. Napier*, 275 N.W.2d 388, 392 (Iowa 1979). It also serves as a common law rule of evidence barring admission of evidence that a plaintiff has received payment from a collateral source. *See, e.g,. Stewart v. Madison*, 278 N.W.2d 284, 293–94 (Iowa 1979). The applicability of the collateral source rule has been reduced by the adoption of legislation allowing admission of collateral source evidence. *See* Iowa Code §§ 668.14(1) [1] and 147.136 [2] (1995). The par-

---

1. Iowa Code section 668.14(1) (1995) provides as follows:

In an action brought pursuant to this chapter seeking damages for personal injury, the court

ties, however, agree that these sections are not relevant and the admission of the settlement and release evidence was not urged on this basis.

To the extent that the collateral source rule remains viable, its application is limited to those cases wherein the underlying purpose of the rule is advanced. We must accordingly determine if the purpose of the rule is served by its application in this case.

In *Smith v. Conn*, 163 N.W.2d 407 (Iowa 1968), the Iowa Supreme Court adopted a rule that:

"... allows a recovery by an injured party in an action against the treating physician for malpractice even though the patient has settled his claim against the original tort-feasor. These jurisdictions [adopting this rule] submit to the trier of fact the question of whether the injured plaintiff intended to release the physician at the time of settlement and, furthermore, allow the trier of fact to decide whether the earlier settlement, in fact, compensated the injured plaintiff for the malpractice which accompanied the treatment of the original injury."

*Smith v. Conn*, 163 N.W.2d at 411 (quoting *DeNike v. Mowery*, 69 Wash.2d 357, 418 P.2d 1010, 1018 (1966)). This rule is a limited exception to the general rule imposing liability for all damages flowing from an injury including medical malpractice. *See Casey v. Koos*, 323 N.W.2d 193, 197 (Iowa 1982) (general rule is that tort-feasor is responsible for

negligence of attending physician in treating injured party).

■ In this case, the district court expressly acknowledged that the purpose for admitting this evidence was to allow the jury to resolve this issue. The collateral source rule is therefore not implicated because the purpose of admitting the evidence of Ray's settlement and release was for a reason other than that prohibited by the rule. We affirm on this issue.

### IV. Jury Misconduct.

■ To obtain a new trial based on allegations of jury misconduct, the complaining party must establish the following: (1) evidence from the juror must consist only of objective facts concerning what actually occurred in or out of the jury room bearing on misconduct; (2) the acts or statements complained of must exceed tolerable bounds of jury deliberations; and (3) it must appear the misconduct was calculated to, and with reasonable probability did, influence the verdict. *State v. Arnold*, 543 N.W.2d 600, 605 (Iowa 1996) (citations omitted). In the application of this test, the supreme court has observed:

Jurors undoubtedly discuss a variety of subjects in considering cases. As a practical matter, courts cannot be too strict on jury discussions or few verdicts could stand. *State v. Houston*, 209 N.W.2d 42 [(1973)] ("a rigid approach would result in interminable litigation"). The matters which jurors bring up and discuss in the privacy of their room largely inhere in

shall permit evidence and argument as to the previous payment or future right of payment of actual economic losses incurred or to be incurred as a result of the personal injury for necessary medical care, rehabilitation services, and custodial care *except to the extent that the previous payment or future right of payment is pursuant to a state or federal program or from assets of the claimant or the members of the claimant's immediate family.*

2. Iowa Code section 147.136 (1995) provides as follows:
 In an action for damages for personal injury against a physician and surgeon, osteopath, osteopathic physician and surgeon, dentist, podiatrist, optometrist, pharmacist, chiropractor, or nurse licensed to practice that profession in this state, or against a hospital licensed for operation in this state, based on the alleged

negligence of the practitioner in the practice of the profession or occupation, or upon the alleged negligence of the hospital in patient care, in which liability is admitted or established, the damages awarded shall not include actual economic losses incurred or to be incurred in the future by the claimant by reason of the personal injury, including but not limited to, the cost of reasonable and necessary medical care, rehabilitation services, and custodial care, and the loss of services and loss of earned income, to the extent that those losses are replaced or are indemnified by insurance, or by governmental, employment, or service benefit programs or from any other source *except the assets of the claimant or of the members of the claimant's immediate family.*

their verdict. *State v. Smith,* 196 Iowa 1003, 193 N.W. 418 [(1923)]. Trial courts have broad discretion in these matters. *State v. Jackson,* 195 N.W.2d 687 (Iowa [(1972)]).

*State v. Lass,* 228 N.W.2d 758, 771 (Iowa 1975).

■ The jurors remarks concerning Dr. Paul's professional reputation and his son's experience arguably fall within the purview of such discussions. Moreover, we are unable to say that there is a reasonable probability these remarks influenced the verdict. We find no error in the district court's refusal to grant a new trial based on the alleged juror misconduct.

#### V. Judge's Remarks During Voir Dire.

■ Ray contends the judge's remarks to the second excused juror discouraged the remaining panel members from expressing their true sentiments regarding jury service in a medical malpractice case. Our review of this issue is limited to Ray's bill of exceptions including the judge's remarks and explanation for their necessity. We find nothing harsh, demeaning, or oppressive about the judge's remarks. In the absence of other objective evidence suggesting the jury panel was influenced as Ray claims, we will not presume the judge's conduct was prejudicial. *See Wilson v. Ceretti,* 210 N.W.2d 643, 645 (Iowa 1973). The district court's denial of Ray's motion for a mistrial based on judicial misconduct is affirmed.

We have considered all of Ray's arguments and find them to be without merit. The judgment of the district court is affirmed in its entirety.

**AFFIRMED.**